Hillsborough, }
June 23, 1927. }

JOSEPHINE V. TETREAULT *v.* FREDERICK G. GOULD.

*Tuttle, Wyman & Starr* and *Ferdinand Farley* (*Mr. Wyman* orally), for the plaintiff.

*Warren, Howe & Wilson* and *Thomas J. Bois* (*Mr. Howe* orally), for the defendant.

MARBLE, J. 1. The defendant contends that Ladouceur committed a wilful trespass upon his right of way with full knowledge of the situation and the danger; that if he himself was negligent in the matter of speed, it was "negligence of the immaterial variety" and, at most, "but furnished Ladouceur the occasion to make his trespass effective"; that Ladouceur's "irruption into the highway" was therefore "a wrongful, responsible, intervening cause which was the sole proximate cause" of the plaintiff's injury. *Morier* v. *Hines*, 81 N. H. 48, 56.

It is a complete answer to this contention to say that the testimony is highly conflicting. Although the defendant testified that he did not see the automobile until he was within 15 feet of it, there were marks on the ground which indicated that he had applied the brake when 20 or 25 feet away. According to the testimony of an expert, if he had not been traveling faster than 15 miles an hour he could have stopped the motor cycle in 10 or 12 feet. He said: "I approached a blind corner, and saw a car come from that corner. I turned to the left to try to avoid a head-on collision, and we collided at the curb." He admitted that his speed was from 18 to 20 miles an hour, and stated that Ladouceur was "going pretty fast" and "cutting the corner close."

Ladouceur, on the other hand, declared that he was "just about creeping along," that his car was moving "around a mile an hour," and that he did not at any time increase his speed. Later he estimated the speed at 4 or 5 miles an hour, and stated that it was his intention to cross to the south side of the street so that the defendant could pass behind him. He was accompanied by two companions, one of whom testified, "As we left the garage, I noticed he

was in low speed, traveling at the rate of about 6 or 7 miles an hour, and as he came to the corner he almost slowed up, looked east and west, and then he crept up until he had a clear vision beside the machines that were parked on the side of Kelley street. Then he kind of noticed this motor cycle coming down, and he made an effort to get out of his way, and as he did, the motor cycle shot to his left side of the street, and then the collision took place."

The plaintiff testified that the car "came right out fast," that the motor cycle was then close to the north curb and that the defendant turned it sharply to the left. She also declared that the defendant was "going too fast" and expressed the opinion that both Gould and Ladouceur, if their speed had not been so great, could have avoided the accident. If the jury believed her statement that no cars were parked on the north side of the street, they may well have found that each driver saw the other in ample season to have stopped but instead of so doing negligently attempted to pass in front of the other.

Under such circumstances it cannot be said as a matter of law that Ladouceur's negligence was the sole cause of the plaintiff's injury. The case of *Morier* v. *Hines* is inapplicable. The driver of a motor vehicle does not have the right of way in the same sense that a locomotive engineer has it. *McCarthy* v. *Souther, ante,* 29. And even if the driver of the motor cycle in *Morier* v. *Hines* can be said to have "committed a wilful trespass" upon the railroad's right of way, this does not mean that the rule enunciated in that case should be extended to highway travelers, whose rights and duties are more strictly reciprocal. The question of proximate cause is "essentially one of fact, and is so treated in this jurisdiction." *Derosier* v. *Company,* 81 N. H. 451, 462. The jury have found the defendant responsible for the plaintiff's injury, and the fact that they have also found Ladouceur equally responsible does not exempt the defendant from full liability. *Ricker* v. *Freeman,* 50 N. H. 420, 432, 433. The court correctly denied the defendant's motion for a directed verdict.

2. Even though Ladouceur could have prevented the accident after he knew of the defendant's negligent conduct and the danger that confronted him, it does not follow that the plaintiff cannot recover against the defendant. The question is raised by the defendant's request that the court charge the jury in substance that if Ladouceur had the last clear chance to avoid the collision, the defendant could not be found liable.

The last-chance doctrine applies only to cases where the injured party is not in the exercise of ordinary care. It qualifies the general

rule that a negligent·plaintiff cannot recover. Here there is no imputation that the plaintiff had any control of the motor cycle, or was careless in entrusting her safety to the defendant. If, under such conditions, the defendant by his negligence placed her in a perilous situation where she was injured by the failure of Ladouceur to prevent the accident after discovering her peril, the defendant could not escape liability in her suit against him, even if he could himself recover against Ladouceur on the theory of the last clear chance. So far as the plaintiff is concerned, she can look to either or both of the parties whose negligent acts have conjoined to produce her injury. *Zebnik* v. *Rozmus*, 81 N. H. 45.

3. The court was also asked to instruct the jury that as between Gould and Ladouceur, the former had the right of way. Since there was no evidence that the driveway from the garage to Kelley street was either a highway or a private way laid out under authority of statute, the defendant was under no statutory duty (Laws 1923, c. 78, s. 1) to yield precedence to Ladouceur. *Dow* v. *Latham*, 80 N. H. 492, 496; *Summerfield* v. *Wetherell*, 82 N. H. 513. This did not, however, in the absence of further statutory provision, give him an absolute and unqualified right of way. The jury were correctly told that the parties owed to each other the reciprocal duty to act reasonably.

4. The defendant also requested an instruction that he could not be found liable if Ladouceur's negligence was the proximate cause of the plaintiff's injury. This would not be true unless Ladouceur's negligence were found to be the sole proximate cause. The request ignored the contingency that the collision might have been due to the combined negligence of both Gould and Ladouceur. The court informed the jury that they could not hold Gould liable if they found he was not negligent, or if negligent, that such negligence was not the proximate cause of the accident.

5. An instruction was also requested to the effect that there was no evidence from which the jury could find that Gould had any reason to believe that an automobile would enter Kelley street from the north.

The defendant was a resident of Manchester, and had traveled in that locality before. He considered it a thickly settled part of the city. Laws 1921, c. 119, s. 13. He testified that there were no vehicles on the north side of the highway to obstruct his vision. Moreover, the jury had a view, which "may have furnished a vital part of the evidence." *Crowther* v. *Company*, 79 N. H. 63, 65; *Reynolds* v. *Com-*

*pany*, 81 N. H. 421, 423. Under such conditions, it was their province to determine whether the defendant knew, or ought to have known, that he was approaching a driveway from which cars were likely to emerge. *Judd* v. *Perkins, ante*, 39.

6. The defendant further requested the following instruction: "Gould's conduct cannot be found negligent nor any cause for the accident if you find that under all the circumstances he drove his motorcycle in a manner as to speed and otherwise such as a person of ordinary care would have driven a motorcycle." The court granted this request in substance by instructing the jury that if the defendant failed to do what a person of ordinary care and prudence would have done under the same circumstances, he was negligent; otherwise, he was not; that "a person in operating a motor vehicle must use a reasonable degree of care, and in regard to the matter of speed, shall not operate his vehicle at a rate of speed greater than is reasonable and proper taking into consideration all of the circumstances," and that if they should find that "the defendant Gould was not negligent, or if negligent, that such negligence was not the proximate cause of the accident," they would return a verdict in his favor.

7. The remaining request called for an instruction that speed in excess of 15 miles per hour would not be evidence of negligence unless it was a contributing cause of the accident. This request, which was granted in effect, may be considered in connection with the answer of the court to a written inquiry from the jury. This inquiry was as follows: "Would a person using reasonable care and proper regard for traffic who is exceeding the speed limit be liable?"

The defendant argues that the question necessarily called for a negative answer, since it is a contradiction in terms to say that a person in the exercise of reasonable care can be negligent. The meaning of the inquiry is not to be tested by strict rules of construction. If the language of the court need not withstand severe critical analysis (*Mason* v. *Railway*, 79 N. H. 300, 305), much less need the language of the jury. The presiding justice had previously read the statutory provisions relating to speed, and had told the jury, without objection on the defendant's part, that speed in excess of 15 miles an hour was *prima facie* evidence of negligence. Laws 1921, *c*. 119, *s*. 13 (P. L., *c*. 103, *ss*. 17, 18). By their question the jury obviously intended to ask if a person otherwise in the exercise of due care could be found liable merely for driving faster than 15 miles an hour. The court so interpreted the inquiry, and answered: "If the excessive rate of speed

was not justified or excusable and was the cause or one of the contributing causes of the accident the person would be negligent even though exercising due care in other respects." This answer was in practical conformity with the defendant's request, and his general exception thereto is accordingly overruled.

8. Subject to the defendant's exception, counsel for Ladouceur introduced evidence tending to prove that at the corner of Alsace and Kelley streets, about 130 feet east of the driveway, there was a sign worded, "Dangerous corner, drive carefully." Assuming that the defendant can invoke this exception against the plaintiff, it is nevertheless unavailing. The jury were instructed respecting the use of the evidence as follows: "This evidence . . . is admitted, not for the purpose of proving . . . that there was any particular spot in that locality that was dangerous, but for what you gentlemen may consider it to be worth as directing anybody's attention to an occasion for them as they drove along to be cautious." As thus limited, the evidence was clearly admissible. *State* v. *Mannion*, 82 N. H. 518, 525.

*Exceptions overruled.*

All concurred.