Merrimack,
Oct. 1, 1940. } No. 3167.

JANE WEISS, *by her next friend,*

*v.*

ELKAN A. WASSERMAN *& a.*

MINNIE F. WEISS *& a. v.* SAME.

HELEN B. STEWART *v.* ELKAN A. WASSERMAN.

GEORGE STEWART *v.* SAME.

*Laurence I. Duncan* and *Robert W. Upton* (*Mr. Duncan* orally), for the plaintiffs Weiss.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the Stewarts.

*Alvin A. Lucier*, by brief, for Wasserman.

ALLEN, C. J.  Of the exceptions taken by the plaintiffs Weiss, one was to the admission of evidence that "A person who knows they have to stop [the automobile he is driving] can make a little quicker stop than a person who doesn't know it and has to react and get their foot on the brake."  The claim was made that it violated the rule against opinion evidence to receive it.  If the evidence was of a fact which is a matter of common knowledge, it was harmless.  *McCarthy* v. *Souther*, 83 N. H. 29, 33.  If common knowledge may not be properly asserted, the evidence was competent, at least in discretion, as being the testimony either of an expert (*Carbone* v. *Railroad*, 89 N. H. 12, 20) or of a layman (*Gardner* v. *Company*, 79 N. H. 452; *Christie* v. *Company*, 87 N. H. 236, 239), even if it bore on a main issue (*Higgins* v. *Carroll*, 86 N. H. 312, 315).

The other exception of the plaintiffs Weiss was taken in connection with a statement in the argument for the Stewarts on the ground that the statement was unsupported by the evidence.  The statement was: "You will remember Mr. Clement . . . testified to what he thought was the space between the two cars when he noticed them, after the other car got by, and I asked him, my recollection of it is, I asked him, 'didn't you at one time tell Mr. Blandin that you thought there was twenty feet between the cars,' and he said 'yes, it might have,' and I said, 'that is the way you looked at it then, wasn't it, when you talked with him,' and he said, 'yes'."  Upon objection to the statement, arguing counsel said: "That is my recollection of it."  In the cross-examination of the witness Clement questions were asked and answers given as follows: "Q. Haven't you said at some time that when you . . . [signalled] for the Wasserman car to stop that you could not tell what the distance was between the cars, it might have been sixty and might have been twenty feet?  A. I said between fifty and sixty feet, may be more.  Q. That is what you said on the witness stand to-day, but I am asking you if you don't remember expressing it as your opinion that it was difficult to tell, that it might have been sixty feet and it might have been twenty, don't you remember telling Mr. Blandin that when you saw him back in May?  A. That may be true.  Q. It was somewhere between those two limits, twenty feet and sixty feet, that right?  A. That is right."

In the charge the jury were instructed: " . . . remarks have been made which might be construed to be statements of fact by counsel, which statements are not evidence and are not to be considered by you. . . . You are to confine yourselves to the evidence that is before you and that alone. Any remarks made by counsel concerning the evidence should give way to your own memory of the testimony . . . . What is to govern you is the record itself and your memory of what the record discloses."

If the allowance of the argument is construed as unqualified and without being dependent on the accuracy of counsel's recollection of the evidence, the charge made it clear that the argument was to receive consideration only if the evidence was stated correctly. Any error in permitting the argument to stand was thus nullified. Opportunity for objecting counsel to seek to have the stenographer's notes of the evidence claimed to be misstated read (*Manning* v. *Company*, 90 N. H. 167, 174) was at all times available.

Wasserman's motions for nonsuits and directed verdicts were properly denied. The yellow line along which he findably passed the Stewart car warned him that it was unsafe to do so. He thus might be found to have occasion to realize that he was creating an emergency and to anticipate that he might be confronted with conditions requiring a sudden stop, endangering the occupants of the car he passed. *Fontaine* v. *Charas*, 87 N. H. 424; *Himmel* v. *Finkelstein*, 90 N. H. 78. A speed of 40 miles an hour after passing the Stewart car and while no more than 100 feet from the intersection and while the Stewart car was no more than 50 to 60 feet behind him might be found a breach of the duty of care owing those in it. Furthermore, it might properly be found that in coming to a stop after the officer's signal he did not take due precaution for their safety. Upon the evidence that a stop from a speed of 40 miles an hour in a distance of 100 feet takes less time than an "ordinary emergency" stop, with no notice given to the driver of a car not over 50 to 60 feet behind that such a sudden stop was to be made, negligence towards those in the car is a reasonable conclusion. The officer's signal to stop was not a command to be oblivious to the safety of others in stopping, and the statutory order that an officer's signal shall be obeyed contemplates no authority to make an improper stop.

The claim of Mrs. Stewart's fault was not conclusively established. The Wasserman car, in passing hers, gave notice of a speed in excess of hers. When it turned, after passing, to the right side of the

roadway directly in front of her, its speed was 10 to 15 miles greater than that of her car. It was not required that she be found carelessly inattentive to the movements of a car traveling in precedence of her car at a more rapid speed than that at which she was proceeding. The shift of the speed of the Wasserman car was findably so sudden and unexpected as to make the time she took in realizing it and meeting it reasonable. A finding that she failed to be duly alert and duly prompt in her course and manner of driving is not compelled.

After the collision Wasserman was arrested by the motor vehicle officer who stopped him at the intersection and taken before a municipal court where he pleaded guilty to a complaint for driving his car at excessive speed. Exception was taken to the denial of his motion that all evidence relative to the proceeding be stricken out on the grounds that the complaint was defectively drawn and that it was of his conduct before passing the Stewart car, his plea of guilty thus being no admission of liability for the collision.

If the rule against collateral attack on a judgment does not dispose of the first ground and the defect in the complaint was an informality which might not be waived (*State* v. *Gove*, 34 N. H. 510, 516), yet this does not destroy the value of the evidence of his plea as an admission. The essential point is that the plea acknowledged the truth of the charge which he understood was brought against him. Improper presentment of the charge did not affect the validity and force of his plea from its standpoint as an admission.

On the ground that the complaint was of his conduct before he approached the intersection, the evidence clearly permits a finding to the contrary. The officer testified that he made no charge on account of anything which happened at the intersection and that he complained only of excessive speed before the collision. But it may be inferred from his testimony that the charge was of conduct during, and not before, the approach to the intersection. Since such conduct might be found to be a cause of the collision, an admission that it was illegal was competent evidence.

The plea was to the charge of excessive speed in coming towards the intersection. It did not acknowledge liability for the collision but only conceded a violation of the law regulating speed. If it was the officer's opinion that the admitted illegal speed had no effect to bring about the collision, the opinion was of indeterminative value. Whether or not the illegal speed was productive of the collision under the test of legal cause was a jury issue.

The request that the jury be instructed not to consider the evidence of the plea and of the proceeding in connection with it amounted to a renewal of the motion for the withdrawal of the evidence. The jury were told that the plea was evidence of Wasserman's conduct "both at the time and immediately prior to the collision." The complaint to which he pleaded guilty was of excessive speed before, while, and after passing the Stewart car. Such speed continued, in approaching the intersection, nearly to it. If by the exception to the charge it was desired to distinguish with literal exactness between the plea as an admission of illegal conduct prior to the collision but not of conduct when the collision occurred, the court should have had the distinction called to attention. The exception applied generally to conduct both before and at the time of the collision, and by the implication of its language disclaimed any distinction. Moreover, the jury must have understood that the charge had no reference to the exact time of the collision. The Wasserman car was then almost, if not wholly, at a standstill, and the charge suggested no undue speed when the car had come to a practically if not completely stationary position and Wasserman's conduct was no longer in issue. It is not thought that the jury were given to understand that wrongful conduct on his part might be found when or after he reached the intersection.

A number of exceptions may be grouped for consideration. They were to denial of requests for direction to the jury to return verdicts for Wasserman if the accident was caused by the officer's command to him to stop, or by improper control of the Stewart car either in Mrs. Stewart's failure to stop in time to avoid striking Wasserman's car while he was coming to a stop or after he stopped, or in her failure to turn out of the path of his car. The requests disregarded the principle of diversified causation by which various factors may contribute to consequences. Wasserman's excessive speed and sudden stop did not necessarily lose their proximate force in producing results by reason of the existence of other causes which may or may not have been negligent. *Tetreault* v. *Gould*, 83 N. H. 99; *Musgrave* v. *Company*, 86 N. H. 375, 378; *Woodman* v. *Peck*, 90 N. H. 292, 295, 296.

Other exceptions were to the denial of requests for instruction in effect that Wasserman was liable for negligence only after passing the Stewart car. The requests were rightly denied. Clearly, if it was negligent conduct to pass the Stewart car, it was because of the danger that harm might result, and the collision might well be found to have been proximately caused by such conduct.

Exception was taken to the instruction that if Wasserman's conduct contributed to cause the collision he was liable, on the ground that reference to negligence as an essential quality of the conduct was omitted from the instruction. The court in a supplemental charge supplied the omission.

Exception was also taken to the charge bearing on Wasserman's negligence before his car passed the Stewart car, on the ground that the court in its supplemental charge modified its prior instruction relative thereto and "unduly emphasized" it in making it a final matter of instruction. The exception has insufficient merit to require discussion.

Wasserman's other exceptions are understood to be waived. All others being overruled, the order is

*Judgments on the verdicts.*

All concurred.