Carroll,
No. 4897.

LOUISE F. DESAUTELLE, *Adm'x*

*v.*

MELVIN E. FLETCHER.

Argued January 3, 1961.

Decided February 7, 1961.

178

*James J. Kalled* and *Philip J. Ganem* (*Mr. Ganem* orally), for the plaintiff.

*Nighswander, Lord & Bownes* (*Mr. Bownes* orally), for the defendant.

DUNCAN, J. Since there was evidence from which it could be found that there was an unobstructed view from a point three hundred feet south of the scene of the accident to a point more than six hundred feet to the north of it, that the defendant had not exceeded twenty-five miles per hour in approaching the scene of the accident, and that the decedent in dark clothing was traveling through rain and darkness "parallel to the highway" midway of the southbound lane of travel when struck, the plaintiff's exception to the Trial Court's refusal to withdraw the issue of contributory negligence from the jury is overruled. There was clearly evidence upon which the decedent could be found to have been contributorily negligent.

The plaintiff excepted to the denial of her request that the jury be instructed that RSA 263:10 "requires that the headlights of an automobile throw sufficient light to make clearly visible all vehicles, persons, or substantial objects within a distance of 200 feet." The same request further sought an instruction that there should be a verdict for the plaintiff if it were found "that the

failure of the . . . lights to project for 200 feet contributed to the cause of [decedent's] death."

We are of the opinion that the request was properly denied. The statute in question requires that headlights "shall throw sufficient light ahead within the traveled portion of the highway" to make persons within the stated distance "clearly visible." RSA 263:10. There was no evidence that the defendant's lights failed to comply with this standard. While the statute does not expressly so provide (cf. Cheatham v. Chabal, 301 Ky. 616, 621) it is reasonably to be understood as establishing a standard to be met under normal atmospheric conditions. See Blackford v. Kaplan, 135 Ohio St. 268, 273. "Clearly, a pair of good, sufficient and legal lights might prove to be deficient in a blinding rain, fog or snowstorm." Cheatham v. Chabal, supra, 621. While a failure to display lights which satisfied the statutory standard would be a violation on the part of the operator, any failure of legally sufficient lights to meet the standard under abnormal conditions would not, even though the circumstances might reasonably require extra caution on the operator's part.

The sole evidence relating to the defendant's lights came from the defendant himself. He testified that his 1953 Chevrolet was inspected the previous October and that the headlights were "in good order" both then and at the time of the accident. In response to questions by plaintiff's counsel, he testified that he did not know how far the lights would throw at the time of inspection, whether on high or low beam. He testified that at the time of the accident they were on low beam, and that they then threw a beam "approximately fifty to sixty feet." He further testified that just before he saw the decedent, he was blinded by the lights of an automobile traveling in the opposite direction, so that he "couldn't see anything at that instant," which was when the other automobile was "almost side by side" with his. After it passed by, he first saw the decedent some six to eight feet ahead.

As previously stated this testimony did not warrant a finding that the defendant's lights fell short of the statutory standard. Moberly v. Flynn, (Ky. App.) 247 S. W. 2d 211, 212. See Connors v. Turgeon, 96 N. H. 479, 481. But if such a finding had been warranted a further finding that proper headlights would have disclosed the decedent's presence on the traveled way in time for saving action before the defendant was blinded by the approaching lights could not have been made upon the evidence. In the first

place, there was no evidence of the distance over which proper lights would have made objects visible under the conditions which existed when the accident occurred. Secondly, if it could be assumed that proper headlights would have clearly illuminated the traveled way at or beyond the scene of the accident when the defendant was some undisclosed distance north of where he was blinded, there was no evidence from which it could be found that the decedent at that time would have been upon the traveled way where she could have been seen, because the course by which she reached the point of impact was not disclosed. See *Townsend* v. *Jones*, 183 Kan. 543, 550; anno. 31 A. L. R. 2d 1424, 1435.

Since a finding of causal violation of the statute could not be made upon the evidence, the plaintiff's request for instructions relating to it was properly denied. *Lockling* v. *Wiswell*, 318 Mass. 160.

The plaintiff excepted "to the giving of the emergency doctrine under the facts in this case." She argues that it conclusively appears that the emergency which confronted the defendant was due to his own negligence, and that the doctrine cannot apply because it appears that the defendant was negligent as a matter of law. Citing *Bonenfant* v. *Hamel*, 96 N. H. 228, 230, she relies upon the proposition that the defendant's "speed was too great for expectable contingencies" in that the evidence showed that he could not have brought his vehicle to a stop within the distance illuminated by his headlights.

Since the decedent first became visible to the defendant when a scant eight feet ahead of his automobile, the defendant would have been no more able to avoid striking her had he been proceeding at the somewhat slower speed which would have enabled him to stop within sixty feet. See *Townsend* v. *Jones*, 183 Kan. 543, *supra*. It cannot be said as a matter of law that conditions were such as to require him to proceed at a speed at which he could have stopped within eight feet. *Gapske* v. *Hatch*, 347 Mich. 648, 658. Hence the emergency doctrine cannot be held inapplicable upon the ground that as a matter of law the emergency was due to the defendant's own negligence. *MacDonald* v. *Appleyard*, 94 N. H. 362, 367.

Nor did the record compel a finding that the defendant was negligent as a matter of law. The issues of excessive speed (RSA 263:53), and of violation of the statutes requiring reduction of speed when approaching an intersection and where special hazards

exist because of weather (RSA 263:54) and when approaching a pedestrian upon the traveled way (RSA 263:44) were submitted to the jury. A speed of twenty miles an hour under the circumstances disclosed was not necessarily negligent. The defendant was entitled to assume that pedestrians would exercise reasonable care for their own safety. The contingency that he would encounter a pedestrian walking toward him in the center of his lane of travel where the highway was bordered by a wide shoulder on the west and a sidewalk on the east was not so expectable as to require a minimum speed. There were no circumstances calculated to warn him of the contingency which arose. *Grealish* v. *Odell*, 89 N. H. 130. *Cf. Richards* v. *Company*, 96 N. H. 272. The plaintiff's exception to submission of the emergency doctrine is accordingly overruled.

The remaining exceptions taken by the plaintiff require no extended consideration. Exceptions to instructions on damages are moot in view of the verdict for the defendant. The plaintiff herself was permitted to testify concerning the decedent's habitual manner of walking "in places where there was no sidewalk." See *Tucker* v. *Railroad*, 73 N. H. 132. The exclusion of the testimony of another witness who operated a place of business on the east side of the street as to whether he "had . . . ever seen [the decedent] walk in that direction before" was proper, since there was no proof or offer of proof that this witness knew of or could testify to any habit or custom on the part of the decedent.

*Judgment on the verdict.*

All concurred.