Hillsborough,  } No. 3786.
April 5, 1949. }

NETTIE MARCHAND & a.

*v.*

PUBLIC SERVICE COMPANY & a.

*McLane, Davis, Carleton & Graf* and *Arthur A. Greene, Jr.* (*Mr. Stanley M. Brown* orally), for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wadleigh* orally), for the Public Service Company of New Hampshire.

*Devine & Millimet* (*Mr. Millimet* orally), for the defendants Groux and Lemay.

BRANCH, C. J. The plaintiffs called as their second witness John J. Connor who was the driver of the defendant's bus, and proceeded at once to cross-examine him, apparently upon the assumption that he was a hostile witness although no permission to pursue this course was asked or granted, and no finding of hostility was made. The witness testified that he did not see the gingerale company's truck until after the accident. Plaintiffs' counsel then undertook to contradict him by confronting him with inconsistent statements made in his report to the police department of the city of Manchester. The witness frankly admitted that the report contained such statements as follows: "Q. Was there a question asked you, 'Was your view obstructed?' Was that question asked you? A. I can't recall. Q. There is an answer filled in beside that question, is there? And was the answer, 'Yes, by parked truck?' A. Yes. Q. And did you sign it? A. I did." For the purpose of further authenticating the report which the witness signed, the plaintiffs subsequently offered the testimony of the clerk in the office of the police department in the city of Manchester charged with taking accident reports. The testimony of this witness and the report itself was excluded, subject to the plaintiffs' exception.

In view of the fact that the witness admitted that the report which he signed contained statements inconsistent with his testimony on the stand, it cannot be said that this ruling of the Trial Court was error. The Court had undoubted discretion to exclude evidence which was only cumulative in effect. 6 Wig. Ev. (3d *ed.*) *s.* 1908. "We conclude that a reasonable limitation of the number of witnesses who may be called in proof of a fact . . . is within the discretion of the Trial Court." *Hupp* v. *Boring*, 8 Ohio C. C. 259, 262. "Some such general principle, as to the limitation of numbers seems to be conceded on all hands." 6 Wig. Ev., *supra*.

During the cross-examination of the plaintiff Nettie Marchand, the witness testified as follows: "Q. As you came on Candia Road east

of the traffic circle, you could look across whatever snow there was and see this red or orange object [the truck]? A. A glimpse of it. Q. You got a glimpse of it? A. Yes. Q. Did you gain an impression of its appearance as you came down there? A. I don't quite remember what remark I made of it if I made any. Q. Did you make a remark to yourself or anybody else that it looked pretty against the snow? A. Yes." (Motion to strike by the plaintiff).

Upon subsequent cross-examination, the witness made it clear that she made no remark aloud. "I could see it plain after we passed the high bank of snow. I saw the snow and then I turned around more and I saw that red car and I said, 'It certainly looks pretty well on the white snow.' That was my remark to myself." After the witness had thus testified, the motion to strike was not renewed and any objection to the admissibility of the testimony must be regarded as waived. It is plain that, by the above language, the witness was seeking to reproduce a clear impression made upon her mind at the time of the occurrence. As such, her answers were admissible. 3 Wig. Ev. (3d *ed.*) s. 726; *State* v. *Flanders*, 38 N. H. 324, 332. "No line can be drawn for the exclusion of any record left upon the memory, as the impress of personal knowledge, because of the dimness of the inscription." *Ib.* The fact that the witness saw the truck at a considerable distance was some evidence of what her driver might have seen had he looked. In other words, the substance of her statement was material and the form in which it was made did not render it inadmissible.

During the cross-examination of the plaintiff Mowles, he testified as follows: "Q. Now, Mr. Mowles, actually your attempt to involve this truck in the accident was an after-thought, wasn't it? A. No. sir." Subsequently plaintiffs' counsel offered in evidence the report of the accident made by Mowles to the Motor Vehicle Department of the state, by which it appeared that Mowles did, at that time, involve the parked truck in the accident and drew a sketch purporting to show its position. The written portions of the report were admitted without objection. The defendants, however, objected to the diagram which appeared on the last page thereof as a self-serving declaration and the Court excluded it. This ruling was clearly within the discretion of the Court under the rule stated in *Hackett* v. *Railroad*, 89 N. H. 514, 519, where it was said, referring to the exclusion of certain photographs: "Provided proper facts appeared, they might be excluded in the exercise of a sound discretion for remoteness or undue prejudice or as being merely cumulative evidence

upon an issue already conclusively proved or admitted." 6 Wig. Ev. (3d *ed.*) *s.* 1908, quoted above.

The substance of the report was already before the jury. The plaintiff had testified that his diagram of the scene of the accident showed the parked truck and thus demonstrated that there was no foundation for the suggestion of defendants' counsel that the witness' attempt to involve the truck in the accident was an afterthought.

The final position of the plaintiffs that this exhibit was offered to rehabilitate Mowles' testimony, is without merit. The recent case of *Twardosky* v. *Company, ante,* 279, held that prior consistent statements of a witness whose credibility had been attacked on crossexamination were properly admitted as a fair means of rehabilitating him. So far as the report was competent for this purpose it was admitted. There is nothing in that opinion, however, which indicates that such a procedure must always be adopted. The rule obviously has no application to statements which are otherwise objectionable. The entire matter is within the discretion of the Trial Court.

The plaintiff argues that the jury should have been instructed that the parking statute was violated as a matter of law by the manner in which the truck was parked. The parking statute (R. L., *c.* 119, *s.* 26) reads as follows: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district when it is practicable to park or leave such vehicle off that portion of such highway." The jury in the present case had a view of the locality where the accident occurred and much testimony was introduced concerning it. In this situation the Court left it to the jury to "determine whether the place of the accident was a business or residence district," and instructed them that if it was, "the statute does not apply and you will disregard it." We are unable to detect any error in this charge. The possibility that the district was a business or residential district was not conclusively disproved nor was it conclusively shown that the statute was violated if it did apply to the situation disclosed by the evidence.

The plaintiffs took the following exception to the charge of the Court: "The plaintiffs except to the statement of the Court concerning burden of proof, that the plaintiffs must establish their claims by a balance of probabilities, and in explanation I would like to say that that exception is based on the difference in what the claims are and what the legal responsibilities are." It is now claimed by the plain-

tiffs that this cryptic exception had reference to the following sentence in the charge: "The plaintiffs here must sustain the burden of proof; that is, they must persuade you that it is a little more probable than otherwise that their claims are correct." The claim is that this sentence of the charge meant that before the plaintiffs could recover they must sustain the burden of proof upon every claim of negligence which they advanced; that is, the jury must find both that the parking statute was violated and that the truck driver was guilty of common law negligence before they could find a verdict against the gingerale company. The language of the exception was not calculated to bring this contention to the notice of the Trial Court, and for this reason, if for no other, it must be overruled. The present claim, however, appears to involve a complete perversion of the charge. The instruction excepted to was not coupled with those reviewing the several claims made by the plaintiffs, but followed an abstract instruction upon the burden of proof. It was obvious that the word "claims" was here used in a general sense, as a description of the claims made by the plaintiffs collectively. The instructions as a whole made it plain that the Court submitted to the jury two questions, 1, whether the statute was violated, and 2, whether the truck was negligently parked, and the jury was plainly told that "if the negligence of the company, regardless of the statute, caused or helped to cause the accident the Green Mountain Gingerale Company is at fault." There seems to be no possibility that the jury could have been misled by the foregoing instructions into a belief that before the plaintiffs could recover they must establish both the violation of the statute and negligence at common law.

The plaintiffs, by their requests numbered 1, 2, 3, and 5, requested the Court to instruct the jury that the plaintiff Mowles had a right to turn to the left of the center of the highway in order to pass the parked truck and was not obligated to stop his car when he observed the truck "occupying a portion of his lane of traffic." So far as these requests contained accurate statements of the law, they were covered in substance by the charge which was given. "The parties to this case had a right as members of the public to use any part of the highway for purposes of travel, yet each was required to exercise that right in a reasonable manner. In other words, each was bound to use ordinary care to avoid receiving or inflicting injury."

The plaintiffs also, by their request numbered 8, sought to have the jury instructed in regard to the last clear chance doctrine. It is obvious from a reading of the record that the case was not tried upon

the theory embodied in the request that the driver of the bus had the last clear chance to avoid the accident. It may be conceded, as now argued, that "Connor knew of Mowles' presence in the highway ahead of him when Mowles first came into the left side of the highway in coming off the curve." It may further be conceded that Connor then knew that Mowles was in some peril. No evidence has been called to our attention, however, and none has been discovered to indicate that Connor knew that Mowles was then oblivious to his danger or was unable to do anything to avoid it. The situation was not one to which the doctrine of the last clear chance is applicable. (*Clark* v. *Railroad*, 87 N. H. 434 and 88 N. H. 203; *McLeod* v. *Caprarello*, *ante*, 343) and the requested instruction was properly denied.

Plaintiffs' requests numbered 4 and 11, in substance reiterated their request for an instruction that the gingerale company violated the parking statute as a matter of law, and, as above stated, were properly denied.

Plaintiffs' supplemental request for instructions had reference to the claim that the truck was negligently parked regardless of the statute, and was given in substance.

Plaintiffs' requests numbered 6, 7, and 10, had reference to the conduct of the bus driver and enumerated various situations in which he might be found to be negligent. These requests were, in substance, covered by the charge, and if not so covered, were properly denied within the rule of *Colby* v. *Lee*, 83 N. H. 303, that "when the legal principle embodied in request is fully stated in a charge, a refusal to give instructions as to its application to particular evidence is not error."

The plaintiffs now complain because the Court gave certain instructions in regard to the possible negligence of Mrs. Marchand in riding with the plaintiff Mowles as a driver, upon the ground that there was no evidence upon which a finding of negligence in this respect could be predicated. A short answer to this argument is that no exception was taken to the charge upon this point and the argument is, therefore, entitled to no consideration.

After the jury had been out approximately five hours, the foreman reported that they were unable to agree, and the Court thereupon gave a supplemental instruction which counsel for the plaintiffs state was "a verbatim condensation of the charge" approved by this court in *Ahearn* v. *Mann*, 60 N. H. 472, 476; *Caverno* v. *Jones*, 61 N. H. 623; *Whitman* v. *Morey*, 63 N. H. 448. We are now asked to re-examine our repeated approval of the *Ahearn* charge. This we decline to do.

428

The *Ahearn* charge has been given so frequently by trial courts and so frequently approved by this court that it must be regarded as an established part of the law of this state, and although it has been stated to set forth the extreme limit of a juror's duty to agree with the others on the panel (*Olena* v. *Company*, 82 N. H. 408, 414), it is believed to have been useful and salutary in its operation and we are not now disposed to limit it in any way.

*Judgments on the verdicts.*

KENISON, J., was absent: the others concurred.